IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**EDDIE LAMAR THOMAS, JR.,**

      **Petitioner,**

  v.                      CASE NO. 22-3121-JWL

**DON LANGFORD,**

      **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner and state prisoner Eddie Lamar Thomas, Jr. proceeds pro se and challenges his state court convictions of aggravated robbery and first degree murder. Having considered Petitioner's claims, together with the state-court record and relevant legal precedent, the Court concludes that Petitioner **is not** entitled to federal habeas corpus relief and **denies** the petition.

### Nature of the Petition

Petitioner seeks federal habeas relief from his state-court convictions of aggravated robbery and first degree murder. As Ground One, he argues that his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution were violated when law enforcement used statements obtained in violation of the holding in *Miranda v. Arizona,* 384 U.S. 436 (1966), to support a search warrant and when physical evidence seized during the execution of that search warrant was admitted at trial. (Doc. 1, p. 5.) As Ground Two, Petitioner argues that he received ineffective assistance from trial counsel, violating the Sixth and Fourteenth Amendments. *Id.* at 6.

**Factual and Procedural Background**[1]

On August 25, 2010, Christopher Dotson's body was found in his apartment; he had "died from a single gunshot wound to the head." *State v. Thomas*, 302 Kan. 440, 441 (2015) (*Thomas I*). The last phone calls and text messages from Dotson's cell phone occurred on August 22, 2010, a day on which "cell phone records revealed over 100 text messages and phone calls to [Petitioner's] cell phone." *Id.* at 442. On August 27, 2010, Petitioner voluntarily went to the Shawnee Police Department to be interviewed. *Id.* Although he initially denied involvement in Dotson's death, he eventually "confessed that while at the apartment, he shot Dotson with a .40 caliber Ruger pistol and took Dotson's wallet." *Id.*

> After the interview, law enforcement officers applied for a warrant to search the residence of Thomas' girlfriend, Shana Williams. The affidavit submitted in support of the search warrant included Thomas' admissions that (1) he owned a .40 caliber Ruger pistol; (2) he took the pistol with him to Dotson's apartment; and (3) he shot Dotson in the face.
>
> During the search of Williams' residence, police seized a white t-shirt and denim shorts that appeared to have small drops of blood on them. The search also revealed a receipt signed by Thomas itemizing the purchase of a Ruger P94 pistol and .40 caliber Smith and Wesson ammunition. Police were unable to locate the pistol or ammunition.
>
> Thomas was first charged with first-degree murder and aggravated robbery in Johnson County District Court case number 10CR2098. However, after his arraignment, Thomas filed a motion to suppress statements he made during his interview, claiming a *Miranda* violation. The district court granted Thomas' motion and issued an order suppressing portions of Thomas' interview, including his confessions that he owned a pistol, shot Dotson, and took Dotson's wallet. The district court later dismissed the criminal charges because Thomas' confessions were the only evidence presented at the preliminary hearing to support the finding of probable cause for the filed charges.
>
> The State refiled charges against Thomas for first-degree murder under alternative theories of premeditation and felony murder, and for aggravated

---

[1] The following facts are largely taken from the Kansas Supreme Court's opinion in Petitioner's direct appeal and from the Kansas Court of Appeals' opinion in Petitioner's collateral attack on his conviction. The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Additional facts will be provided as necessary in the analysis section below.

2

>robbery. Following another preliminary hearing, the district court found that probable cause existed to bind Thomas over for trial. The district court also incorporated its order from Thomas' original criminal case, which had suppressed Thomas' un-*Mirandized* confessions. Thomas thereafter filed a motion seeking to suppress the physical items seized when the police executed the search warrant which had been issued upon an affidavit containing Thomas' unlawfully obtained incriminating statements. The district court denied the motion.

*Id.* at 442-43.

A jury convicted Petitioner of one count each of aggravated robbery and first-degree murder and the state district court sentenced him "to consecutive prison terms of life imprisonment without the possibility of parole for 20 years for first-degree murder and 61 months for aggravated robbery." *Id.* at 444; (Doc. 17-2, p. 11). Petitioner pursued a direct appeal and, on July 24, 2015, the Kansas Supreme Court (KSC) affirmed his convictions. *Thomas I*, 302 Kan. at *441.

Petitioner then sought state habeas relief by filing a motion pursuant to K.S.A. 60-1507. *Thomas v. State*, 2021 WL 2483902 (Kan. Ct. App. June 18, 2021) (unpublished opinion) (*Thomas II*), *rev. denied* March 11, 2022. The state district court denied the motion without a hearing and, on appeal, the Kansas Court of Appeals (KCOA) affirmed the denial. *Id.* at *2. The KSC denied Petitioner's petition for review on March 11, 2022.

On June 16, 2022, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) As noted above, he asserts two grounds for relief: one based on the admission at trial of evidence obtained by a search warrant obtained, in part, on the strength of un-*Mirandized* statements and the other based on ineffective assistance of trial counsel. Respondent filed his answer on January 23, 2023. (Doc. 16.) Petitioner filed his traverse on April 18, 2023. (Doc. 22.)

## Timeliness

As a threshold issue, Respondent argues that this matter was filed after the expiration of

the relevant statute of limitations. (Doc. 16, p. 10.) This action is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 28 U.S.C. § 2244(d). As relevant to the current matter, the AEDPA provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

28 U.S.C. § 2244(d)(1).

The one-year limitation period generally runs from the day after the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review," as provided by § 2244(d)(1)(A). *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011); *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). Under Supreme Court law, "direct review" concludes when the availability of direct appeal to the state courts and request for review to the Supreme Court have been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Rule 13(1) of the Rules of the Supreme Court of the United States allows ninety days from the date of the conclusion of direct appeal to seek certiorari, and the Tenth Circuit has explained that "if a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [her] direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires." *United States v. Hurst*, 322 F.3d 1256, 1259 (10th Cir. 2003).

The AEDPA also contains a tolling provision: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Respondent asserts that the current petition was untimely filed based on the following calculation:

> Petitioner's convictions were affirmed on direct appeal by the Kansas Supreme Court on July 24, 2015. *State v. Thomas,* 302 Kan. 440, 353 P.3d 1134 (2015). Petitioner did not file a petition for certiorari in the United States Supreme Court and therefore his conviction became final 90 days later on October 22, 2015. Thus, his deadline for filing for federal habeas corpus relief, absent any tolling, was October 22, 2016.
>
> By application of the prison mailbox rule, Petitioner filed a post-conviction Motion for Habeas Corpus pursuant to K.S.A. 60-1507 on July 19, 2016. This tolled the statute of limitations after 271 days had elapsed. The district court denied Petitioner's post-conviction motion on August 29, 2017, and Petitioner appealed. The Kansas Court of Appeals affirmed the district court on June 18, 2021, *Thomas v. State,* 488 P.3d 530 (Table), 2021 WL 2483902 (Case No. 122,885) (Kan. Ct. App., 2021) (unpublished opinion), and the Kansas Supreme Court denied review on March 11, 2022.
>
> The federal statute of limitations began running again, with 94 days remaining. Absent further tolling, the statute of limitations expired on June 14, 2022. Petitioner electronically filed his Petition for Habeas Corpus on June 16, 2022. Thus, his petition was filed after the expiration of the statute of limitations.

(Doc. 16, p. 11-12.)

The Court agrees with Respondent that the KSC issued its opinion in Petitioner's direct appeal on July 24, 2015 and that Petitioner then had 90 days in which to file a petition for certiorari in the United States Supreme Court. Under Supreme Court Rule 30, however, "the day of the act, event, or default from which the designated period begins to run is not included." S. Ct. Rule 30(1). Thus, the 90-day period did not begin until July 25, 2015, and Petitioner had until *and including* October 22, 2015 in which to file a petition for certiorari. When he did not, his conviction became final and the one-year AEDPA limitation began to run—on October 23, 2015.

This one-day difference is not dispositive, however, because the Tenth Circuit also has explained that this Court should use the "anniversary method" of calculating timeliness under the AEDPA because the AEDPA "statute of limitations is measured in years." *See Hurst*, 322 F.3d at

5

1260-61; 28 U.S.C. § 2241(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). Whether the Court uses Respondent's calculations or its own, the final day of the AEDPA statute of limitations fell on a weekend—October 22, 2016 was a Saturday and October 23, 2016 was a Sunday.

Under Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, which the Tenth Circuit has held should govern resolution of "calculation issues concerning the AEDPA statutes of limitations, if the last day of the relevant period "is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *See Hurst*, 322 F.3d at 1261; F. R. Civ. P. 6(a)(1)(C); *see also Longoria v. Falk*, 569 Fed. Appx. 580, 581 (10th Cir. 2014) (unpublished) (applying this rule to a § 2254 petition). Thus, the AEDPA limitation period for Petitioner would have continued to run until the end of Monday, October 24, 2016. In other words, absent tolling, the last day on which Petitioner could have filed a timely § 2254 petition was October 24, 2016.

But, as Respondent acknowledges, the one-year limitation period was tolled on July 19, 2016, when Petitioner filed a K.S.A. 60-1507 motion. Respondent counts the number of days of the one-year AEDPA limitation period that ran prior to the date of tolling, then subtracts that number from 365 to determine how many days were left when the AEDPA limitation period resumed. Although that is a logically appealing strategy for calculation, the Tenth Circuit uses a different approach. The Tenth Circuit has explained that courts should count "[t]he number of days that [a prisoner's state-court application for post-conviction relief] is pending" and that the resulting number "is added to the one-year anniversary date to establish the final deadline for filing a § 2254 application in federal court." *See Stuart v. Utah*, 449 Fed. Appx. 736, 737-38 (10th Cir.

6

2011) (citing *Harris*, 642 F.3d at 906 n.6).

In the matter now before the Court, Petitioner's K.S.A. 60-1507 action was pending before the Kansas state courts from July 19, 2016 to March 11, 2022, for a total of 2,062 days. When those 2,062 days are added to October 24, 2016—the original anniversary date—the final deadline for filing the current § 2254 petition becomes June 17, 2022. Because Petitioner filed his petition on June 16, 2022, this matter was timely filed and the Court need not address Petitioner's argument in his traverse that he is entitled to equitable tolling. (*See* Doc. 22, p. 18-19.) Instead, the Court will proceed to the merits of Petitioner's asserted grounds for federal habeas relief.

## Standard of Review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require that state-court decisions receive the "benefit of the

doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## Discussion

Petitioner asserts two grounds for relief, both of which are based on the following underlying facts. During a pre-arrest interview with police, Petitioner made certain incriminatory statements that were included in a subsequent application for a search warrant for Petitioner's girlfriend's residence. *Thomas I*, 302 Kan. at 442. When the residence was searched, law enforcement discovered physical evidence that seemed to implicate Petitioner in the charged crimes. After Petitioner was criminally charged and bound over for trial, however, he successfully moved to suppress the incriminatory statements in question because they were obtained in violation of the holding in *Miranda v. Arizona*, 348 U.S. 436, 479 (1966). He then moved to dismiss the charges against him on the grounds that the only evidence presented at the preliminary hearing was the now-suppressed statements. *Thomas I*, 302 Kan. at 443.

The district court granted the motion to dismiss and the State immediately refiled the charges, leading to another preliminary hearing, after which the district court again bound Petitioner over for trial. *Id.* The district court incorporated its prior order suppressing the incriminating statements under *Miranda* but denied Petitioner's subsequent motion to suppress the physical evidence that had been found in the search of his girlfriend's residence. *Id.* During the direct appeal, Petitioner argued to the KSC that "the Fifth Amendment to the United States Constitution prohibits the use of his un-*Mirandized* statements in the affidavit submitted in support of the application for the search warrant" and "that without the un-*Mirandized* statements, the affidavit did not support a finding of probable cause for issuance of the search warrant." *Thomas I*, 302 Kan. at 451.

The KSC analyzed the issue as follows:

*Standard of Review*

Typically, when an affidavit in support of an application for a search warrant is challenged, this court uses a deferential standard of review for determining whether the issuing magistrate had a substantial basis for concluding probable cause existed. *State v. Adams,* 294 Kan. 171, 180, 273 P.3d 718 (2012). Thomas does not challenge whether the affidavit contained sufficient information to constitute probable cause. Instead, he challenges the legality of using statements obtained in violation of the *Miranda* rule to secure a search warrant. This issue is a question of law subject to de novo review. See *State v. Althaus,* 49 Kan. App. 2d 210, 217, 305 P.3d 716 (2013) (assessing legal effect of affidavit in support of search warrant typically presents question of law over which appellate courts exercise unlimited review).

*Analysis*

The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to remain silent and the right to have a lawyer present during a custodial interrogation. See *State v. Walker,* 276 Kan. 939, 944, 80 P.3d 1132 (2003) (citing *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966] ). In *Miranda,* the United States Supreme Court held that statements obtained from defendants during a custodial police interrogation, without a full warning of constitutional rights, were inadmissible as having been obtained in violation of the Fifth Amendment's privilege against self-incrimination. 384 U.S. at 444, 86 S. Ct. 1602.

The district court determined that Thomas' police interview turned into a custodial interrogation about an hour and a half after it began, and therefore the court suppressed all statements made after that time because police had failed to advise Thomas of his *Miranda* warnings. Several of these suppressed statements were included in the affidavit submitted in support of the request for a search warrant, *e.g.,* Thomas' statements that he owned a .40 Ruger pistol, shot Dotson with the pistol, and took Dotson's wallet, leading to Thomas' claim that the warrant was invalid. But, relying on *United States v. Patane,* 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004), and *United States v. Phillips,* 468 F.3d 1264 (10th Cir. 2006), the district court denied the motion, finding that Thomas' un-*Mirandized* statements could be included in an affidavit submitted in support of a search warrant.

*Patane* held that nontestimonial evidence obtained with a warrant affidavit containing un-*Mirandized* statements only violates the Fifth Amendment if the evidence obtained is the fruit of an actually coerced statement. 542 U.S. at 644, 124 S. Ct. 2620. *Phillips,* citing to *Patane,* held that "physical evidence that is the fruit of a voluntary statement should not be suppressed even if the statement was elicited without a *Miranda* warning." 468 F.3d at 1266.

9

> But we need not decide the impact of *Patane* on this case. "'Assuming the application and affidavit for the search warrant contained information both lawfully and unlawfully obtained, the question remains whether the lawfully obtained information by itself supports probable cause that would have justified issuance of the search warrant by the magistrate.'" *State v. Fisher,* 283 Kan. 272, 301, 154 P.3d 455 (2007) (quoting *State v. Weas,* 26 Kan. App. 2d 598, 603, 992 P.2d 221 [1999], *rev. denied* 268 Kan. 855 [2000]). In other words, if the lawfully obtained information is sufficient, standing alone, to support the requisite probable cause to issue a warrant, the existence of any unlawfully obtained information will not invalidate the warrant.
>
> In determining whether probable cause exists to support a search warrant, the issuing magistrate's duty is to make a practical, commonsense decision whether, given the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Powell,* 299 Kan. 690, 695, 325 P.3d 1162 (2014). When reviewing the issuing judge's decision to issue a warrant, this court conducts "an independent analysis of the content of the affidavit, but we need only see enough to persuade us that there was a substantial basis for the magistrate's conclusion." *State v. Hicks,* 282 Kan. 599, 613, 147 P.3d 1076 (2006).
>
> The affidavit stated the following lawfully obtained information: Dotson was found dead in his apartment on August 25, 2010; he died from a single gunshot wound to the head; he was last seen around 8:30 p.m. on August 22, 2010; his cell phone revealed multiple communications between himself and Thomas on the evening of August 22, 2010; during the course of their August 22nd communications, Dotson offered to pay Thomas $500 in exchange for sex; Dotson withdrew $500 from his ATM on the evening of August 22, 2010; and Thomas admitted to going to Dotson's apartment on the evening of August 22, 2010. Accordingly, we conclude that the affidavit contained sufficient evidence of motive and opportunity to commit the crime and therefore supported a finding of probable cause apart from Thomas' un-*Mirandized* confessions. See *Fisher,* 283 Kan. at 300, 154 P.3d 455 (When reviewing a magistrate's finding of probable cause, the standard is whether the evidence provided the magistrate with a substantial basis for concluding that probable cause existed; it does not demand that the reviewing court determine whether, as a matter of law, probable cause existed, but rather there was a fair probability that evidence will be found in the place to be searched.). We therefore affirm the district court's denial of the motion to suppress.

*Id.* at 452-54.

In his subsequent K.S.A. 60-1507 proceeding, Petitioner argued that his trial counsel "was ineffective for not citing the 'fruits of the poisonous tree doctrine' to suppress evidence in his criminal case," referring to the physical evidence discovered in the search. *See Thomas II*, 2021

10

WL 2483902, at *5. The KCOA rejected this argument, holding (1) that it was an improper attempt to use his K.S.A. 60-1507 motion as a substitute for a second direct appeal and (2) that "the fruit of the poisonous tree doctrine does not apply to exclude physical evidence that surfaced because of an un-*Mirandized*, voluntary statement." *Id.* (citation omitted). The KSC denied Petitioner's petition for review.

### Ground One

In Ground One, Petitioner argues that the use of his later-suppressed statement to support the search warrant application and the admission at trial of the physical evidence found in the search violated his rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. 1, p. 5.) Specifically, Petitioner asserted that the "[u]se of illegally obtained statements to support [the] warrant denied petitioner his rights to [*sic*] self-incrimination, illegal search and seizure and due process guaranteed to him by [the] 4th, 5th [and] 14th Amend[ments]." *Id.* As the supporting facts for Ground One, Petitioner states:

> Thomas filed [a] motion to suppress statements for *Miranda* violations and a motion to dismiss in case number 10CR2098. The [d]istrict court granted both the suppression and to dismiss the case. The State refiled the case under 11CR2712. Thomas refiled a motion to suppress statements for *Miranda* violation and filed a motion to suppress evidence seized in [the] execution of [the] search warrant [of his girlfriend's home]. The district court granted the former but denied the latter. The search warrant was issued improperly based upon the strength of Thomas' inadmissible statement. The inadmissible statement provided a location, 8509 Holmes Rd. The search warrant affidavit cited 8509 Holmes Rd.
>
> This location provided evidence to amount to probable cause. Without the statement, the affidavit falls below probable cause. Thomas' statement to police are inadmissible and the search warrant [of his girlfriend's home] was based, in significant part, on Thomas' statement.

*Id.* at 5, 15.

Respondent agrees with Petitioner that Petitioner has exhausted state court remedies on

this argument.[2] (Doc. 16, p. 3.) Respondent first asserts that at its core, Ground One is a Fourth Amendment claim. *Id.* at 13. It is clear that at least part of Ground One is based upon the Fourth and Fourteenth Amendments; Petitioner identifies the Fourth Amendment as one of the Constitutional provisions he believes was violated, and he contends specifically that without his un-*Mirandized* statement, the affidavit did not establish probable cause for issuance of the search warrant. (Doc. 1, p. 5.) *See* U.S. Const. Amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *United States v. Cordova*, 792 F.3d 1220, 1223 (10th Cir. 2015) ("[A] search conducted pursuant to a warrant not supported by probable cause violates the Fourth Amendment.").

As Respondent notes and Petitioner does not dispute, the United States Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 494 (1976), that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Petitioner does not contend that he was denied an opportunity to fully and fairly litigate Fourth Amendment claims in the state courts. Thus, the Court agrees with Respondent that to the extent that Ground One seeks relief based on the Fourth Amendment, *Stone* precludes federal habeas relief. (*See* Doc. 16, p. 14.)

It is also clear, however, that Ground One additionally alleges the violation of Petitioner's Fifth and Fourteenth Amendment rights. (Doc. 1, p. 5.) And, as Petitioner points out, the United

---

[2] The Court notes that in his direct appeal, Petitioner identified "four sentences that would be excluded from the affidavit" if the Court agreed that inclusion of un-*Mirandized* statements was improper. (Doc. 17-23,p. 27.) None of the four identified sentences included Petitioner's girlfriend's address, which is the only statement challenged in the current federal habeas action. However, because Respondent has not chosen to raise exhaustion as an affirmative defense, the Court will not address this point further. *See Day v. McDonough*, 547 U.S. 198, 205-09 (2006) (holding that where a respondent fails to raise an affirmative defense such as exhaustion, "district courts are permitted, but not obliged, to consider[ them] sua sponte").

States Supreme Court held in *Withrow v. Williams*, 507 U.S. 680, 682-83 (1993), that the "restriction on the exercise of federal habeas jurisdiction" over a state prisoner's claim that his or her "conviction was based on evidence obtained through an unconstitutional search or seizure . . . does not extend to a state prisoner's claim that his conviction rests on statements obtained in violation of the safeguards mandated by *Miranda*." 507 U.S. at 682-83. In other words, the doctrine that requires federal habeas courts to refrain from granting relief on a state prisoner's claim that he or she was convicted on evidence obtained in violation of the *Fourth* Amendment does not extend to a state prisoner's claim that he or she was convicted on statements obtained in violation of the *Miranda* requirements, which protect the *Fifth* Amendment right against self-incrimination. *See id.* at 686-90.

The problem with applying *Withrow* to this case is that Petitioner does not argue that his un-*Mirandized* statements were admitted at trial. Rather, he goes a step farther: he contends that he was improperly convicted based on physical evidence that was obtained via a search warrant that was issued, in part, based on un-*Mirandized* statements. This argument fails for multiple reasons. First, the argument that the affidavit supporting a search warrant application was insufficient is a Fourth Amendment claim, even when the alleged unconstitutionality implicates *Miranda*, because the constitutional requirement at issue—that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation"—is located in the text of the Fourth Amendment.

Second, even assuming solely for the sake of argument that Ground One can be liberally construed to raise a Fifth Amendment claim, it nevertheless fails because the sole statement that Petitioner identifies in Ground One as being un-*Mirandized* and improperly included in the search

warrant application is the street address of the residence that was searched.[3] (*See* Doc. 1, p. 5.) But the affidavit submitted in support of the search warrant application did not attribute to Petitioner a statement identifying the precise address to be searched. Rather, the affidavit stated, in relevant part, that Petitioner stated during the interview "that he stays with his girlfriend, [S.W.], in the area of 85th St and Holmes Rd in Kansas City, MO. He stated that [she] was born in 1988 and that she lives in apartment number #184, *but he cannot remember the address*. A search for [S.W.] through Accurint revealed" the street address. (Doc. 17-22, p. 20 (emphasis added).)

Moreover, Petitioner has attached to his traverse a transcript of the interview during which he made the statement about his girlfriend's address. (Doc. 22-4.) That transcript reflects that the statement was made during the portion of the interview later ruled to be noncustodial and investigative in nature, which meant *Miranda* was not necessary. More specifically, in an order issued in Petitioner's first criminal case, which was later adopted by reference in the second criminal case, the state district judge held that certain statements Petitioner had made during the interview violated *Miranda* and must be suppressed. (Doc. 22-2, p. 11.) But the judge later clarified that the scope of the suppression was limited and did not include "any admissions made by the

---

[3] In the portion of his traverse dedicated to Ground Two, Petitioner refers for the first time in this habeas proceeding to other statements in the search warrant-affidavit that he believes were unlawfully obtained and should not have been used to obtain the search warrant. (Doc. 22, p. 15-16.) But these statements were not identified at any earlier point in this matter as statements on which the arguments in Ground One are based. It is well-established that "[c]ourts routinely refuse to consider arguments first raised in a habeas traverse." *Martinez v. Kansas*, No. 5-3415-MLB, 2006 WL 3350653, *2 (D. Kan. Nov. 17, 2006) (unpublished order) (collecting cases); *See also LaPointe v. Schmidt*, No. 14-3161-JWB, 2019 WL 5622421, *5 (D. Kan. Oct. 31, 2019) (unpublished memorandum and order) (striking new claim from traverse). The appropriate way to present argument or claims not included in the operative petition is by seeking leave to amend. *Id.* at *5 ("The court will strike the new claim as it was not included in the petition and Petitioner did not seek leave to amend."). Additionally, if the Court were to consider arguments Petitioner raised for the first time in his traverse, it would then need to allow Respondent the opportunity to respond to those arguments. This type of sur-reply is neither contemplated by the applicable rules nor conducive to reaching finality of briefing in federal habeas matters. *See Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, *1 (D. Kan. Sept. 23, 1998) (stating that the rules governing sur-replies "'are not only fair and reasonable, but they assist the court in defining when briefing matters are finally submitted and in minimizing the battles over which side should have the last word'"). Thus, the Court will analyze Ground One only as it relates to the statement or statements about the address of the residence that was searched.

defendant prior to the time that the interrogation became custodial." (Doc. 22-3, p. 2-3.) The record and filings now before this Court reflect that the district court held the interrogation became custodial at 7:06 p.m., when one of the detectives told Petitioner, "'I think you did kill Chris." (Doc. 22-2, p. 4, 11; Doc. 22-3, p. 3.)

A review of the transcript of the interview and of the recording of the interview reflects that the detectives told Petitioner that his mother had said Petitioner did not live with her and they asked Petitioner where he was while they were at his mother's home. (Doc. 22-4, p. 6; Doc. 26.) Petitioner replied that he was with his girlfriend, gave her name, and said she lived by herself in Missouri. (Doc. 22-4, p. 6-7; Doc. 26.) When pressed for a more specific address, Petitioner said all he knew was that 184 was the apartment number and she lived in an apartment complex in Kansas City, Missouri. (Doc. 22-4, p. 7-8; Doc. 26.) The detectives suggested a few options for the apartment complex, and Petitioner ultimately agreed it was one particular complex. (Doc. 22-4, p. 8; Doc. 26.) The transcript, which is redacted, begins with the start of the interview and ends before either detective says to Petitioner, "I think you did kill Chris." (Doc. 22-4, p. 1-42.) Similarly, the redacted video recording of the interview reflects the conversation about Petitioner's girlfriend's address, which occurred toward the beginning of the interview. (Doc. 26.)

Although the Court liberally construes pro se pleadings, it cannot make arguments for Petitioner or act as his advocate. The petition in this matter clearly identifies the sole statement on which Petitioner bases his argument in Ground One as the information regarding the address of his girlfriend's residence, the home that was later searched. But the necessary predicate for success in this argument—that the statement was taken in violation of *Miranda* and thereby violated his Fifth Amendment rights—simply is not supported by the record. In other words, the record now before this Court reflects that the state district court held that Petitioner was *not* entitled to *Miranda*

15

warnings at the time he spoke about his girlfriend's address. Petitioner does not challenge that holding.[4] Rather, he mischaracterizes the statements as having been suppressed because they were obtained in violation of *Miranda*. Because that premise is factually incorrect, Petitioner is not entitled to relief on Ground One. In other words, he cannot successfully challenge his conviction on the grounds that the failure to give *Miranda* warnings should have prevented police from relying on the address-related statement when seeking a search warrant.

## Ground Two

In Ground Two, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel and to due process guaranteed by the Sixth and Fourteenth Amendments when trial counsel "failed to exclude previously dismissed evidence." (Doc. 1, p. 6.) Petitioner further explains that the State proceeded in the second prosecution on "the same evidence that was available before," without introducing "new evidence," and trial counsel failed to "argue this point." Petitioner argues that the failure to "argue this point" prejudiced him and resulted in an unfair trial. *Id.*

Respondent agrees that Petitioner has exhausted state court remedies on this argument. (Doc. 16, p. 3.) The KCOA explained in its opinion in Petitioner's proceedings under K.S.A. 60-1507:

> ***2. Thomas' trial counsel did not fail to exclude "previously dismissed evidence."***
>
> Thomas' second claim, that his counsel failed to exclude "previously dismissed evidence" from his second criminal case, has no basis in the record. . . . [I]n Thomas' original case, his counsel successfully suppressed the admission of incriminating statements from Thomas' interrogation, leading to the dismissal of the criminal charges. After the State refiled the criminal charges, his counsel filed another motion to suppress these statements for *Miranda* violations, which the

---

[4] In his traverse, Petitioner argues for the first time that his statements were involuntary and thus it violated the Fifth Amendment—even exclusive of a *Miranda* analysis—to admit evidence at trial that resulted from those statements. (Doc. 22, p. 13-14.) Under the rationale explained above in n.3, the Court will not consider this argument because it is being raised for the first time in this Court in the traverse.

16

district court granted. The district court correctly dismissed this ineffective assistance of counsel claim.

*Thomas II*, 2021 WL 2483902, at *5.

Claims of ineffective assistance are analyzed under the test established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, "a defendant must show both [(1)] that his counsel's performance fell below an objective standard of reasonableness and [(2)] that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted). The United States Supreme Court has also explained, with respect to ineffective assistance of state-court counsel claims brought in a federal § 2254 proceeding such as this one:

> Establishing that a state-court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable application is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. These standards are intended to be "difficult to meet," *id.* at 102, and they require that this Court give the state court decisions the "benefit of the doubt." *See Woodford*, 537 U.S. at 24.

In the petition, Petitioner framed Ground Two as asserting that "[t]rial counsel failed to exclude previously dismissed evidence [which] denied Petitioner his rights to effective assistance of counsel and due process g[ua]ranteed to him by the [Sixth] and [Fourteenth] Amend[ments.]" (Doc. 1, p. 6.) As supporting facts for Ground Two, Petitioner stated:

> Thomas filed for a dismissal of charges after the preliminary hearing and [a] motion to suppress [his] statement. The motion to dismiss was granted. The State refiled charges against Thomas using the same evidence that was available before,

17

> introducing no new evidence. Trial counsel didn't argue this point[,] prejudicing Thomas and [resulting in] an unfair trial.

*Id.*

Respondent in his response and Petitioner in his traverse both delve into discussion of whether the KSC and KCOA reasonably and correctly applied *United States v. Patane*, 542 U.S. 630, 636 (2004), which holds that the fruit of the poisonous tree doctrine does not require the exclusion of physical evidence discovered as the result of an un-*Mirandized* but voluntary statement, and whether *Patane* is distinguishable from Petitioner's circumstances. (Doc. 16, p. 19; Doc. 22, p. 15-18.) While the arguments relate to arguments that Petitioner raised in his 60-1507 proceeding in the state courts, they are not relevant to Ground Two as it was articulated in the federal habeas petition now before this Court, which alleges only that trial counsel was ineffective for failing to successfully argue that evidence that was excluded during the first prosecution should have been excluded during the second. (*See* Doc. 1, p. 6.)

As the KCOA noted, the argument that trial counsel "failed to exclude previously dismissed evidence" is not factually supported by the record. Petitioner points to no evidence that was excluded in the first prosecution and allowed in the second. To the extent that Petitioner appears to be focusing on the physical evidence that resulted from the search discussed at length above, no motion to suppress that evidence was made during the first prosecution, much less granted. The suppression order in the first prosecution related only to the un-*Mirandized* statements Petitioner made during a custodial interrogation; those statements were suppressed in the second prosecution as well. But the question of whether the physical evidence discovered in the search should be suppressed did not arise until the second prosecution. Finally, the record clearly reflects that the State introduced evidence at the preliminary hearing in the second prosecution that was not introduced at the preliminary hearing in the first.

18

Simply put, when there was no "previously excluded" evidence admitted at trial, trial counsel cannot have provided ineffective assistance by allowing its admission. Thus, Petitioner has failed to show that he is entitled to federal habeas relief based on the arguments in Ground Two. He has not established that the KCOA applied a legal standard other than *Strickland* to his claim that trial counsel failed to exclude previously excluded evidence, nor has he established that the KCOA's application of *Strickland* was unreasonable or that the KCOA unreasonably determined the facts in light of the evidence before it. *See Harrington*, 562 U.S. at 105.

### Evidentiary Hearing

Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determines that an evidentiary hearing is not required in this matter. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case is sufficient to resolve the sole issue before the Court and it precludes habeas relief.

### Conclusion

In summary, the KCOA applied the correct legal standards and reasonably determined the facts in the light of the evidence presented to it. Petitioner is not entitled to federal habeas corpus relief and the petition will be denied.

Because the Court enters a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue

"only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253. Having considered the record, the Court finds petitioner has not made a substantial showing of constitutional error in the state courts and declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 20th day of June, 2023, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>

JOHN W. LUNGSTRUM
United States District Judge